**POLSINELLI LLP**
WESLEY D. HURST (SBN 127564)
whurst@polsinelli.com
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 556-1801
Facsimile: (310) 556-1802

**POLSINELLI PC**
JESS A. DANCE (*pro hac vice application forthcoming*)
jdance@polsinelli.com
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone: (303) 572-9300
Facsimile: (303) 572-7883

**POLSINELLI PC**
BRITTON ST. ONGE (*pro hac vice application forthcoming*)
bstonge@polsinelli.com
7676 Forsyth Blvd., Suite 800
St. Louis, MO 63105
Telephone: (314) 889-7024
Facsimile: (314) 231-1776

*Attorneys for Plaintiff*
*CK FRANCHISING, INC.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CK FRANCHISING, INC. an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL VALLEY CARE, INC., a California corporation doing business as "Central Valley Care"; JOHN W. HATCH, an individual; and SANDRA E. HATCH, an individual,<br><br>Defendants. | Case No. 8:26-cv-00228<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

Plaintiff CK Franchising, Inc. ("CKFI"), by and through its attorneys, states as follows for its Complaint for Injunctive Relief against Defendants Central Valley Care, Inc. ("Central Valley"), John W. Hatch ("John"), and Sandra E. Hatch ("Sandra"):

## NATURE OF THE ACTION

1. This is an action for, among other things, Defendants' violations of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1831–1839, and breach of contract in connection with their continued provision of personalized in-home personal care and companionship services in California. CKFI seeks only injunctive relief.

2. CKFI is a franchisor with franchisees located in 45 states. Its franchisees operate pursuant to written franchise and related agreements with CKFI.

3. For years, Defendants have operated two CKFI franchises for territories in California. Defendants most recently renewed their franchise agreements with CKFI for these two territories in November 2015; they expired in November 2025.

4. Defendants began operating a third franchise, for a nearby territory in California, in November 2017. This franchise agreement will expire by its terms in November 2027, unless renewed.

5. Rather than honor their contractual and legal commitments owed to CKFI, Defendants have flouted their obligations by misappropriating CKFI's trade secrets and other proprietary information and unlawfully using this information to run a competing business during the term of the unexpired franchise.

## PARTIES, JURISDICTION & VENUE

6. Plaintiff CK Franchising, Inc. is an Ohio corporation that has its principal place of business (i.e., its headquarters) in California, specifically at One Park Plaza, Suite 300, Irvine, CA 92614.

7. Defendant Central Valley Care, Inc. is a California corporation that has its principal place of business in California. It may be served through its registered agent, Sandra Hatch, at 2672 Mitchell Avenue, Clovis, CA 93611.

8. Sandra Hatch is an individual residing in California. She may be served at 2672 Mitchell Avenue, Clovis, CA 93611. Sandra is a 10% owner of Central Valley.

9. John Hatch is an individual residing in California. He may be served at 2672 Mitchell Avenue, Clovis, CA 93611. John is a 90% owner of Central Valley. John is Sandra's father.

10. This Court has original jurisdiction because federal law (the Defend Trade Secrets Act) creates CKFI's cause of action for misappropriation of trade secrets (Count I). *See* 28 U.S.C. § 1331(a); 18 U.S.C. § 1836(b) (private cause of action), (c) ("The district courts of the United States shall have original jurisdiction of civil actions brought under this section."); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 377 (2012).

11. This Court has supplemental jurisdiction over CKFI's related state-law claims for breach of contract because the claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12. The Court has personal jurisdiction over Defendants because they are domiciled in California.

13. This Court has venue over this action by consent because all three franchise agreements between CKFI and Central Valley provide that actions brought by either party not subject to mandatory arbitration (such as this case) "must be instituted and maintained only in a federal or state court having subject matter jurisdiction that is located in the county where CKFI's headquarters is located when the action is instituted." The parties further agreed in the franchise agreements "to submit to the jurisdiction and venue of any such court."

14. Further, John and Sandra agreed in their Agreement and Guaranty of Related Parties that they would perform all of the covenants, representations, warranties, and agreements of Central Valley set forth in the franchise agreement,

which includes consenting to venue where CKFI is headquartered. John and Sandra further agreed in their Confidentiality Agreements and Ancillary Covenants Not to Compete that venue for any proceeding relating to or arising under those agreements will be in the city where CKFI's principal place of business is located (if not in Dayton, Ohio). CKFI's principal place of business is in Irvine, California, which is within this District. John and Sandra further agreed that, for any action that includes injunctive relief, CKFI could bring the action in "any court that has jurisdiction," which this Court has. Accordingly, venue for CKFI's claims against John and Sandra is proper in this District.

## FACTUAL BACKGROUND

### A. CKFI's Business and Trade Secrets

15. CKFI is a franchisor. It has developed, and is the sole and exclusive owner of, a unique, proprietary, and comprehensive method for the operation of a business that provides personalized in-home care to seniors and other adults who need assistance in daily living, including companionship care, personal care, and personal technology services and equipment, among other related services.

16. Pursuant to written franchise agreements, CKFI grants franchises to qualified persons to own and operate Comfort Keepers businesses ("Comfort Keeper Locations") using the proprietary system and methods of doing business developed by CKFI, as well as certain trademarks, service marks, trade dress and other indicia of origin, but only in such manner and at such locations as are expressly authorized by CKFI.

17. Since it began offering franchises approximately 25 years ago, CKFI has grown its franchise system to 625 open franchised Comfort Keeper Locations across the United States, with more locations under development.

18. CKFI has extensively advertised and promoted the Comfort Keepers locations and the products and services it offers throughout the United States. As a result of such efforts and the considerable money spent in connection therewith, the

services and related products offered by CKFI and its franchisees under the name "Comfort Keepers" have met with widespread public approval and have established demand and goodwill among consumers throughout the United States, including in California.

19. CKFI has also expended significant time, skill, effort and money to develop certain skills, concepts, business techniques, marketing systems, and a specialized method and process with uniform standards, specifications, methods, policies, procedures, systems and information for operating the Comfort Keeper locations (the "System").

20. In addition to receiving a license to use the CKFI trademarks, trade names, and trade dress, Comfort Keepers franchisees are given, through a required training program and receipt of materials including the Comfort Keepers "Manual," a variety of confidential information proprietary to CKFI, including the methods, techniques, formats, specifications, procedures, information, systems, methods of business management, sales, and promotion techniques and knowledge of and experience in the operation and franchising of CKFI locations (the "Confidential Information").

21. Confidential Information includes "Client Information," which is any combination of the "name, contact information, care needs, Services provided, Equipment leased or purchased, payment history, and relationship history of any Client, Care Recipient and/or Subscriber . . . ." § 3.15. Central Valley acknowledged that "[a]ll Client Information belongs to" CKFI. § 3.15.

22. CKFI's Confidential Information shared with its Comfort Keepers franchisees has substantial economic value and gives Comfort Keepers franchisees a significant edge over their competitors. For instance, CKFI has proprietary methods for recruiting, supporting, and servicing clients that are shared only with Comfort Keepers franchises. These methods have been critical to creating the substantial goodwill associated with the "Comfort Keepers" brand and system of

serving clients. Comfort Keepers franchisees depend heavily upon clients returning for personalized in-home care services, and not just using the services once, so it is critical that the services be provided in such a way that clients wish to return. For instance, CKFI has developed secret and proprietary methods for providing in-home care services that involve not simply assisting the client with the activities of daily living, but also engaging personally with the client on an elevated level, thereby improving the client's well-being and daily outlook. As a result, Comfort Keepers' clients do not simply "age in place," but thrive while aging. CKFI's proprietary methods promote high client satisfaction and retention. Comfort Keepers' competitors do not use these methods.

23. CKFI undertakes significant efforts to maintain the confidentiality of its Confidential Information and other trade secrets, including by incorporating provisions in its franchise agreements for the protection of such information, and requiring franchisees and their agents and associates to execute confidentiality agreements. For instance, employees are prohibited from making copies of confidential documents providing Confidential Information to any unauthorized person. Franchisees may divulge CKFI's Confidential Information only to those employees who need access to perform their duties as an employee of the Comfort Keepers franchise. CKFI's proprietary service methods are stored on an internal website available only to Comfort Keepers franchisees, called the "CK Central." Access to CK Central is granted only to those with a @comfortkeepers.com email address and password. Franchisees are responsible for ensuring their employees maintain the confidentiality of CKFI Confidential Information. Franchisees must stop using, and return to CKFI, CKFI's Confidential Information upon the expiration or termination of the parties' franchise agreement.

24. CKFI maintains a series of manuals, bulletins, directives, memoranda, marketing specification guides, video or audio tapes, computer media, and electronic and other written communications prepared by CKFI or under its direction from time

to time (collectively, the "Manual").

25. The Manual is and has been available on the "CK Intranet," the private, Internet-based network that CKFI maintains to post information for review and use by Comfort Keepers franchisees

26. Central Valley has access to the Manual on the CK Intranet.

27. The Manual remains CKFI's exclusive property at all times.

28. Each item that is part of the Manual expressly reiterates that all information in the Manual is confidential, is CKFI's sole and exclusive property, is valuable and proprietary to CKFI, and that disclosure of such information would be harmful to CKFI and is strictly prohibited.

29. CKFI's Confidential Information includes the Manual.

30. Taken as a whole, the System and the Confidential Information, including trade secrets and Client Information, are unique to CKFI, are proprietary, and provide CKFI with an advantage over competitors.

**B. Central Valley operates under the Franchise Agreements for years**

31. Central Valley and CKFI entered into two franchise agreements, effective November 28, 2015. The parties entered into a third agreement effective December 1, 2017.

32. The first franchise agreement, for Unit #651, governs Central Valley's franchising activities in certain zip codes in Fresno County, California, specifically 93611, 93612, 93613, 93619, 93626, 93720, 93727, 93729, 93730, 93747, 93844, and 93888. It renewed an earlier franchise agreement that was signed in 2005. A true and correct copy of the #651 Franchise Agreement, including relevant attachments, is attached hereto as **Exhibit A**. The #651 Franchise Agreement expired by its terms on November 27, 2025.

33. The second franchise agreement, for Unit #652, governs Central Valley's franchising activities in certain other zip codes in Fresno County, California, specifically 93606, 93630, 93650, 93704, 93705, 93710, 93711, 93722,

93723, 93740, 93755, 93765, 93790, 93791, 93792, 93793, and 93794. It renewed an earlier franchise agreement that was signed in 2005. A true and correct copy of the #652 Franchise Agreement, including relevant attachments, is attached hereto as **Exhibit B**. The #652 Franchise Agreement expired by its terms on November 27, 2025.

34. The third franchise agreement, for Unit #1038, governs Central Valley's franchising activities in certain other zip codes in Fresno County, California, specifically 93616, 93625, 93648, 93652, 93654, 93657, 93662, 93701, 93702, 93706, 93721, 93725, 93728, and 93737. A true and correct copy of the #1038 Franchise Agreement, including relevant attachments, is attached hereto as **Exhibit C**. The #1038 Franchise Agreement is in force and will expire by its terms on November 30, 2027, unless renewed.

35. The #651, #652, and #1038 Franchise Agreements (collectively, the "Franchise Agreements") are materially the same as one another.

36. Pursuant to the Franchise Agreements, Central Valley was granted "a Franchise to operate a Franchised Business within Your territory under the Marks and System and in accordance with the terms of this Agreement." § 4.1. For years, Defendants operated their three Comfort Keepers franchises, for all three territories, out of a single office located at 2224 N. Fine Ave., Suite 101, Fresno, CA 93727.

37. As defined in the Agreement and as relevant here:

(a) "Franchise means the rights to operate a Franchised Business." § 3.37.

(b) "Franchised Business means a business providing Services and Products in accordance with the System and in association with the Marks under a Franchise Agreement. The Franchised Business that You will operate under this Agreement is referred to in this Agreement as 'Your Franchised Business.'" § 3.40.

(c) "Services means all Core Services and those Additional Services and ancillary services that CKFI has authorized You to perform." §3.73.

(d) "Core Services means the following: (a) Homemaker/Companionship Services; (b) Personal Care Services; and (c) Technology Services. 'Core Services' also includes every other Service that CKFI requires Franchisees to offer. § 3.24.

(e) "Homemaker/Companionship Services means services and care for the elderly and other adults who need assistance in daily living, including companionship, meal preparation, light housekeeping, grocery and clothes shopping, grooming and dressing guidance, and assistance with recreational activities, all as further described in the Manual." § 3.45

(f) "Personal Care Services means basic personal care services for the elderly and other adults who need assistance with the basic activities of daily living, including eating, bathing, and dressing, all as further described in the Manual." § 3.65.

(g) "System means the distinctive business system developed and owned by CKFI . . . including all of the Confidential Information, Services, vendor arrangements, business methods, methods of operation, Standards, technical knowledge, trade secrets, purchasing arrangements, advertising materials, marketing concepts and strategies, information on sources of supply, administrative procedures, business forms, and employee training techniques." § 3.80.

(h) "Competitive Business means (a) business that derives any revenues from providing any of the services encompassed within the definition of Services, from providing any services that CKFI may now or in the future authorize You or other Franchisees to offer in connection with the operation of Franchised Businesses, or from selling or leasing Products similar to those that CKFI may authorize Franchisees to sell or lease . . . ." § 3.20.

(i) "Related Parties" means "persons affiliated with either CKFI or

[Central Valley] . . . , including Persons owning or otherwise having a Substantial Interest in CKFI or in You . . . .” § 3.67.

(j) “Clients means Persons (including hospitals and other residential or medical facilities) that engage Your Franchised Business, or any other Franchised Business, to provide Services to Care Recipients and/or Subscribers. A Client may or may not be the intended Care Recipient or Subscriber.” § 3.16.

(k) “Subscriber means a Person who signs an agreement with a Franchisee for that Franchise to provide Technology Services and Equipment. A Subscriber may, but need not be, a Client or Care Recipient.” § 3.77

(l) “Customers means Persons who purchase Products other than in connection with Services.” § 3.27.

(m) “Care Recipient means a person to whom You or another Franchisee provides Services.” § 3.11.

38. Central Valley made several pertinent promises to CKFI in the Franchise Agreements, including the following:

(a) *Use of Confidential Information*. Central Valley and all Related Parties promised that they would not, during the Term of the franchise (or afterward), communicate or divulge to any person any “Confidential Information that may be communicated to You or any of Your Related Parties or of which You may be apprised under this Agreement,” and would not, after termination of the franchise, “use for Your and/or [Your Related Parties’] own benefit” any such information. § 7.9(b). Central Valley also promised not to “copy, duplicate, record, or otherwise reproduce any Confidential Information or make it available to any unauthorized Person.” *Id.*

(b) *In-term non-compete*. Central Valley and all its Related Parties promised that they would not, during the Term of the Franchise

Agreement: (i) divert or attempt to divert any business, Client, Care Recipient and/or Subscriber to any competitor of any Franchised Business by direct or indirect inducement or otherwise; or (ii) own, maintain, operate, engage in, or have any financial or beneficial interest in any Competitive Business located in the state where CKFI operates a Comfort Keepers franchise. § 7.11(a)(i), (iii).

(c) *Post-term non-compete*. Central Valley and all Related Parties promised that they would not, during the two-year period after termination of the Franchise Agreement (including by expiration and non-renewal): (i) divert or attempt to divert any business, Client, Care Recipient and/or Subscriber to any competitor of any Franchised Business by direct or indirect inducement or otherwise; or (ii) own, maintain, operate, or engage in (among other actions) any Competitive Business within the franchised territory or within 10 miles from the border of the territory. § 7.11(b)(i), (iii).

(d) *Post-term non-solicitation*. Central Valley and all Related Parties promised that they would not, during the two-year period after termination of the Franchise Agreement (including by expiration and non-renewal), contact or solicit (i) any former Client, Care Recipient and/or Subscriber for the purpose of providing or offering to provide any service identical or similar to any Core Services or Additional Services provided by any Franchised Business and/or to sell or lease any personal care technology equipment; or (ii) any referral source with which Central Valley or a Related Party had contact during the Term, for the purpose of obtaining a referral for the provision of any service identical or similar to any Core Services or Additional Services provided by the Franchised Business. § 7.11(c).

(e) *Post-term client transition*. Central Valley promised, once the

Franchise Agreement terminated for any reason (including by expiration or non-renewal), to (i) work with CKFI to arrange for the orderly transition of its Clients, Subscribers, Customers, and Care Recipients to other Comfort Keepers Franchisees in the market area; (ii) immediately and permanently stop using the Client Information, retain no copies of it (except as required by law), and destroy all copies of such information that it is not required by law to retain; (iii) transmit to CKFI all historical accounting information on Client and Customer billing and Client and Customer contact information; (iv) assign to CKFI all telephone numbers that have been used in its Franchised Business; and (v) comply with its covenants against competition set forth in Section 7.11. § 11.3(a), (c), (d), (f).

39. At the same time that it signed the Franchise Agreements, Central Valley executed, in connection with each franchise location, a Conditional Assignment of Telephone Numbers, Facsimile Numbers, E-Mail Addresses, and Social Media, and Universal Resources Locator (URL Addresses) ("Conditional Assignment"), which are attached to the Franchise Agreements as Attachment 3. Therein, Central Valley assigned to CKFI "all telephone numbers and listings, facsimile numbers, email addresses, social media and social networking addresses, and URLs used by [it] now or in the future in the operation of [its] Comfort Keepers Franchise." The Assignments became "automatically effective upon termination or non-renewal of" the Franchise Agreement to which it pertained, at which time, Central Valley promised "to do whatever is necessary: (i) to cause the telephone company providing local service to [Central Valley] to promptly transfer all of [Central Valley's] numbers and associated listings to" CKFI.

40. Central Valley used the phone numbers (559) 456-8064 and (559) 456-8077, among potentially others, when operating the #651 and #652 franchise locations.

41. Upon the expiration of the #651 and #652 Franchise Agreements, Central Valley's assignment of its phone number and fax number became automatically effective under the Conditional Assignment.

42. Central Valley acknowledged and agreed in the Franchise Agreement that a violation of the restrictive covenants in § 7.11 "would result in irreparable injury to CKFI for which no adequate remedy at law may be available," and further "consent[ed] to the issuance of an injunction prohibiting any conducted by You and/or Your Related Parties in violation of the terms of this Section 7.11." § 7.11(i).

43. Central Valley further agreed to "pay all court costs and reasonable legal fees incurred by CKFI in obtaining specific performance, injunctive relief, or any other remedy available to CKFI for any violation of the requirements of this Section 7.11." § 7.11(i).

44. Separately, Central Valley agreed in the Franchise Agreements to pay CKFI's damages, costs, and expenses (including reasonable attorneys' fees) that CKFI incurs "subsequent to the termination or expiration of the franchise granted under this agreement in: (a) obtaining injunctive or other relief for the enforceable of any provisions of this Agreement . . . ." § 12.12.

45. In addition to Central Valley's promises made to CKFI in the Franchise Agreements, John and Sandra made personal promises to CKFI in separate: (1) Agreements and Guaranty of Related Parties, which were executed at the same time CKFI and Central Valley executed the respective Franchise Agreements and are attached to the Franchise Agreements as Attachment 4, and (2) Confidentiality Agreements and Ancillary Covenants Not to Compete, which were executed at the same time CKFI and Central Valley executed the respective Franchise Agreements and are attached to the Franchise Agreements as Attachment 6.

46. In the separate Agreement and Guaranty of Related Parties signed at the same time as the Franchise Agreement, John and Sandra promised they had read the terms and conditions of the Franchise Agreements and agreed to perform all of

the covenants, representations, warranties, and agreements of the Franchisee and its Related Parties set forth in the Franchise Agreement, including, without limitation, the covenants against competition.

47. In each Confidentiality Agreement and Ancillary Covenants Not to Compete, John and Sandra made the same or materially similar promises to CKFI as Central Valley made in the Franchise Agreements with respect to the treatment and use of Confidential Information, non-competition, and non-solicitation both during and after the Term of the Franchise Agreements. For instance, and as relevant here, John and Sandra promised:

(a) at all times, to use CKFI's trade secrets only in the course of their employment by or association with a Comfort Keepers franchisee and then only for so long as the franchisee is licensed by CKFI to use CKFI's unique system for operating a business that provides care to seniors and others in need of assistance in daily living;

(b) during the term of the Confidentiality Agreement and Ancillary Covenants Not to Compete, not to divert or attempt to divert, directly or indirectly, any business, business opportunity, or customer or any "Franchised Business" or any prospective or current Client of any Franchised Business to any competitor or any Franchised Business or of the network of Franchised Businesses (where "Franchised Business" means the operation of a Comfort Keepers business);

(c) during the term of the Confidentiality Agreement and Ancillary Covenants Not to Compete, own, maintain, operate, engage in, or have any financial or beneficial interest in any business that (i) is of a character and concept similar to a Franchised Business, (ii) derives revenue from providing any of the services and/or products that CKFI has authorized Franchised Businesses to provide, or (iii) derives revenues from providing certain services relating to the health or care

of the elderly or infirm, including geriatric care management services, or skilled nursing services;

(d) for an uninterrupted two-year period beginning when the Franchise Agreement terminates or expires, not to divert or attempt to divert, directly or indirectly, any business, business opportunity, prospective or current Client of any Franchised Business to any competitor, including John and Sandra;

(e) for an uninterrupted two-year period beginning when the Franchise Agreement terminates or expires, not to own, maintain, operate, engage in or have any financial or beneficial interest in any business that (i) is of a character and concept similar to a Franchised Business, or (ii) offers or provides any of the services or and/or products that CKFI has authorized Franchised Businesses to provide, either within the territory granted to a Comfort Keepers franchise or within 10 miles of that protected territory

(f) for an uninterrupted two-year period beginning when the Franchise Agreement terminates or expires, not to solicit (i) any former Client of the Franchised Business to which the Franchise Agreement pertained for the purpose of providing or offering to provide any Authorized Services/Products or; (ii) any referral sources with which John or Sandra had contact during the terms of the Franchise Agreement for the purpose of obtaining a referral for the provision of Authorized Services/Products.

48. John and Sandra specifically acknowledged in the Confidentiality Agreement and Ancillary Covenants Not to Compete that (1) the confidential information to be disclosed was proprietary information belonging to CKFI, (2) the information provided an economic advantage to CKFI and was not generally known to, and was not readily ascertainable by proper means by, CKFI's competitors; (3)

and promised to receive the information in confidence and would at all time maintain it in confidence, among other promises that are referenced above.

49. John and Sandra agreed that in the event of a breach of the Confidentiality Agreements and Ancillary Covenants Not to Compete, CKFI would be irreparably injured and be without an adequate remedy at law, and in such event, will be entitled to a temporary and or permanent injunction and a decree for the specific performance of the terms of the agreements and covenants, without the necessity of showing actual or threatened harm or payment of a bond or other security

50. With exceptions that are relevant and apply here, the parties agreed to resolve by arbitration, using JAMS, Inc., all claims or controversies arising out of or related to the Franchise Agreement, the parties' "relationship" with one another, or Central Valley's operation of the Franchised Business (any "Dispute").

51. The parties carved out from this promise to arbitrate "the right of either party to seek and obtain temporary injunctive relief from a court of competent jurisdiction in accordance with applicable law against threatened conduct that may cause loss or damage." § 12.8(a).

52. The parties further expressly agreed that neither party must "follow the ADR Process with respect to (a) any claim or Dispute involving actual or threatened disclosure or misuse of Confidential Information or any other intellectual property of" CKFI or "(d) any action to enforce the covenants set forth in Section 7.11 of this Agreement," among other listed claim or controversies. § 12.8(b).

53. This action involves only matters *not* subject to the ADR Process set forth in the Franchise Agreement.

54. The Confidentiality Agreements and Ancillary Covenants Not to Compete do not require arbitration of claims that arise under them or to enforce them.

55. Although CKFI gave them an opportunity to renew (and several

reminders that the term was approaching), Defendants voluntarily elected not to renew the #651 and #652 Franchise Agreements.

56. Central Valley, John, and Sandra operated Comfort Keepers Franchise Units #651 and #652 under the terms of the Franchise Agreements until their expiration and non-renewal on November 27, 2025.

57. Upon expiration, Defendants were contractually required to comply with various post-term covenants and obligations.

**C. Defendants failed to honor their covenants.**

58. After the expiration and non-renewal of the Franchise Agreements for Comfort Keepers Franchises #651 and #652, Defendants have violated the covenants and promises they made in all three Franchise Agreements, in the related Guarantees, in the Conditional Assignment, and in the Confidentiality Agreements and Ancillary Covenants Not to Compete.

59. In short, Defendants continue to operate the System as they did before, only under the new trade name "Central Valley Care" rather than as "Comfort Keepers." They do so from the same location as before. Only the name has changed. To do so, Defendants misappropriated and are now using CKFI's Confidential Information, including Client Information, to operate as "Central Valley Care."

60. A true and correct copy of a photograph depicting Central Valley Care's signage outside of its office located at 2224 N. Fine Ave., Suite 101, in Fresno (the same location from which it operated its Comfort Keepers franchises, in territory #651), taken on or around December 17, 2025, is attached hereto as **Exhibit D**.

61. Upon information and belief, Central Valley also now operates from a second office located at 1849 N. Helm Ave., also in Fresno.

62. In addition, Central Valley has failed and refused to work with CKFI to arrange for the orderly transition of CKFI's Clients, Subscribers, and Care Recipients to another Comfort Keeper Franchisee(s) in the market area, in violation of Central Valley's post-termination obligation under the Franchise Agreement.

63. In addition, Defendants have failed to work with CKFI to transfer telephone numbers (559) 456-8064 and (559) 456-8077 to CKFI and instead continue to use the numbers in their operation of Central Valley Care.

64. Further, John and Sandra have solicited (and continue to solicit) former Clients of CKFI for the purpose of providing or offering to provide Services that were previously provided under the expired and non-renewed Franchise Agreements with Central Valley.

65. Defendants are knowingly breaching their contractual obligations to CKFI. During a December 3, 2025 phone call between Sandra, John, and CKFI Senior Director Mario Cisneros, John and Sandra informed CKFI that Central Valley decided not to renew its Comfort Keepers franchises in the #651 and #652 territories and wished to exit the Comfort Keepers network altogether (specifically with respect to #1038, which was not soon expiring). Cisneros reminded John and Sandra that two years remained on the #1038 Franchise Agreement. When reminded of their obligations to transfer CKFI's clients from the #651 and #652 territories to neighboring franchisees, John and Sandra responded that Central Valley would not relocate them. Cisneros reminded John and Sandra that these are "CKFI's clients," not Central Valley clients. John responded, "we don't see it that way." Cisneros replied, "the Franchise Agreement is clear on this." John and Sandra were then reminded of their other in-term and post-term obligations. Cisneros reminded John and Sandra that they could not service these clients and would be held to their agreements with CKFI.

66. During a later call with Sandra, on December 17, 2025, Sandra told CKFI Regional Director Angela McClain that Central Valley had recently transferred five clients from its territory under the #1038 Franchise Agreement to another Comfort Keepers franchise. CKFI has been unable to confirm that the care for these five clients was transferred. The neighboring franchisee is in default of his obligations to CKFI and appears to have ceased operating his Comfort Keepers

franchise altogether.

67. McClain also asked about Central Valley's plan to transfer CKFI's several clients from the #651 and #652 territories to new Comfort Keepers franchises, given that #651 and #652 Franchise Agreements had expired. Sandra responded that Central Valley had only five clients, which had already transitioned to a new franchisee in the area. McClain confronted Sandra with Central Valley's November 2025 reporting, which listed hours and revenue and indicated that Central Valley had more than five clients. Sandra responded, "they are mine" and indicated her belief that Central Valley owed no further obligations to CKFI with respect to these CKFI clients because they were located within territories governed by the #651 and #652 Franchise Agreements, which had expired. When reminded that she owed obligations for two years past the expiration of the two expired franchise agreements, Sandra said she disagreed.

68. McClain offered that Sandra could transfer clients in those two territories to the #1038 territory for the remainder of the #1038 Franchise Agreement. Sandra declined, responding that CKFI could "bring it on," referring to a legal action to enforce the Franchise Agreements and ancillary agreements.

**FIRST CLAIM FOR RELIEF**
**(Violation of Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1831–1839)**
**(Against all Defendants)**

69. CKFI repeats and re-alleges the preceding factual allegations.

70. CKFI owns trade secrets, including, but not limited to, the Confidential Information, including the Client Information.

71. CKFI's trade secrets are related to services used in, or intended for use in, interstate commerce. Licensed Comfort Keepers franchisees and company-owned Comfort Keepers businesses use CKFI's trade secrets to operate Comfort Keepers locations across the country.

72. CKFI's trade secrets are secret and confidential. CKFI takes reasonable measures to protect its trade secrets from discovery and to guard the secrecy of the

information. Among other things, franchisees must execute a franchise agreement containing confidentiality restrictions before they receive access to CKFI's trade secrets. CKFI's confidential Manual, which describes CKFI's operational trade secrets, expressly reiterates that the Manual and all information therein is confidential, is CKFI's sole and exclusive property, is valuable and proprietary to CKFI, and that disclosure of such information would be harmful to CKFI and its strictly prohibited.

73. CKFI's trade secrets are not generally known and are not readily ascertainable.

74. CKFI derives independent economic value from its trade secrets. Its trade secrets provide CKFI with a competitive advantage over its competitors.

75. Defendants have used, and are continuing to use, CKFI's trade secrets, without CKFI's authorization, in connection with operating a competing business known as Central Valley Care. Defendants' conduct is unlawful and constitutes misappropriation of CKFI's trade secrets.

76. Defendants misappropriated CKFI's trade secrets by using such trade secrets without CKFI's authorization.

77. Following expiration of the #651 and #652 Franchise Agreements, Defendants improperly retained CKFI's trade secrets without authorization, through improper means.

78. Defendants misappropriated, and are misappropriating, CKFI's trade secrets by using them without CKFI's authorization in connection with the operating of a competing business known as Central Valley Care.

79. As a direct and proximate result of Defendants' trade secret misappropriation, CKFI has been, and will continue to be, substantially injured in its business, including its goodwill and reputation.

80. As a result of Defendants' misappropriation, CKFI has suffered, and is continuing to suffer, irreparable harm that cannot be fully compensated by damages.

81. CKFI has no adequate remedy at law.

82. CKFI is entitled to preliminary and permanent injunctive relief against Defendants, enjoining them from misappropriating CKFI's trade secrets.

**SECOND CLAIM FOR RELIEF**
**(Violation of Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61–.69 and the California Uniform Trade Secrets Act, Cal. Code. Civ. P. § 3426)**
**(Against all Defendants)**

83. CKFI repeats and re-alleges the preceding factual allegations.

84. Defendants have used, and are continuing to use, CKFI's trade secrets, without CKFI's authorization, in connection with the operating of a competing business known as Central Valley Care. Defendants' conduct is unlawful and constitutes misappropriation of CKFI's trade secrets.

85. As set forth above, Defendants have violated, and will inevitably violate, the Ohio Uniform Trade Secrets Act and, alternatively, the California Uniform Trade Secrets Act by using CKFI's trade secrets in connection with the operation of a competing business.

86. As a direct and proximate result of Defendants' trade secret misappropriation, CKFI has been, and will continue to be, substantially injured in its business, including its goodwill and reputation.

87. CKFI has suffered, and is continuing to suffer, irreparable harm that cannot be fully compensated by damages caused by Defendants' misappropriation.

88. CKFI has no adequate remedy at law.

89. CKFI is entitled to preliminary and permanent injunctive relief against Defendants, enjoining them from misappropriating CKFI's trade secrets.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract – #1038 Franchise Agreement and Guaranty)**
**(Against All Defendants)**

90. CKFI repeats and re-alleges the preceding factual allegations.

91. CKFI and Central Valley entered into the #1038 Franchise Agreement.

92. The #1038 Franchise Agreement is a valid and enforceable contract.

93. CKFI at all times fully performed all of its obligations under the #1038 Franchise Agreement.

94. John and Sandra entered into the #1038 Agreement and Guaranty of Related Parties, in which they personally promised to perform all of the covenants, representations, warranties, and agreements of Central Valley set forth in the #1038 Franchise Agreement.

95. The #1038 Agreement and Guaranty of Related Parties are valid and enforceable contracts.

96. CKFI at all times fully performed all of its obligations under the #1038 Agreement and Guaranty of Related Parties.

97. Central Valley breached Section 7.9(b) of the #1038 Franchise Agreement by using for its own benefit CKFI's Confidential Information, including Client Information, communicated to Central Valley.

98. Central Valley breached Section 7.11(a) of the #1038 Franchise Agreement by, during the Term (which has not expired), (i) diverting business, Clients, and/or Care Recipients to a competitor of any Franchised Business; and (iii) owning, maintaining, operating, and engaging in, Central Valley Care, a Competitive Business located in a state (California) in which CKFI operates or licenses others to operate a business under the Comfort Keeper trademark.

99. John and Sandra breached the #1038 Agreement and Guaranty of Related Parties through the same conduct undertaken by Central Valley alleged above.

100. Unless and until Defendants are ordered to perform their obligations under the #1038 Franchise Agreement and Agreement and Guaranty of Related Parties, CKFI is likely to be substantially injured in its business, including its goodwill and reputation, for which CKFI has no adequate remedy at law, as damages alone cannot fully compensate CKFI for Defendants' ongoing breaches.

101. This threat of future irreparable injury to the business identity, goodwill

and reputation of CKFI requires that Defendants be ordered to perform their contractual obligations.

102. CKFI is entitled to preliminary and permanent injunction relief against Defendants, enjoining its ongoing breaches of the #1038 Franchise Agreement and Agreement and Guaranty of Related Parties.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract – #1038 Confidentiality Agreement and Ancillary Covenants not to Compete)**
**(Against Sandra and John)**

103. CKFI repeats and re-alleges the preceding factual allegations.

104. CKFI, John, and Sandra entered into a Confidentiality Agreement and Ancillary Covenants Not to Compete attendant to the #1038 Franchise Agreement (the "#1038 Confidentiality Agreement").

105. The #1038 Confidentiality Agreement is a valid and enforceable contract.

106. CKFI at all times fully performed all of its obligations under the #1038 Confidentiality Agreement.

107. John and Sandra breached Section 2 of the Confidentiality Agreement portion of the #1038 Confidentiality Agreement by failing to use CKFI's Trade Secrets *only* in the course of their employment by or association with Central Valley as a Comfort Keepers franchisee, and by using them in their operation of a non-Comfort Keepers business—Central Valley Care.

108. John and Sandra breached Section 1 of the Covenants not to Compete or Solicit provisions of the #1038 Confidentiality Agreement by, during the term of the agreement, (a) diverting business, business opportunities, or customers of any Franchised Business or any prospective or current client of any Franchised Business to a competitor of any Franchised Business or of the network of Franchised Businesses; (b) owning, maintaining, operating, engaging in, or having a financial interest in a business that is of a character and concept similar to a Franchised

Business; (c) deriving revenues from providing any of the services and/or products that CKFI has authorized Franchised Businesses to provide; (d) deriving revenues from providing geriatric care management services or skilled nursing services to the elderly or infirm.

109. Unless and until Sandra and John are ordered to perform their obligations under the #1038 Confidentiality Agreement, CKFI is likely to be substantially injured in its business, including its goodwill and reputation, for which CKFI has no adequate remedy at law, as damages alone cannot fully compensate CKFI for Sandra and John's ongoing breaches.

110. This threat of future irreparable injury to the business identity, goodwill and reputation of CKFI requires that Sandra and John be ordered to perform their contractual obligations.

111. CKFI is entitled to preliminary and permanent injunction relief against Sandra and John, enjoining their ongoing breaches of the Franchise Agreement.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Contract – #651 Franchise Agreement, Guaranty, and Assignment)**
**(Against All Defendants)**

112. CKFI repeats and re-alleges the preceding factual allegations.

113. CKFI and Central Valley entered into the #651 Franchise Agreement.

114. The #651 Franchise Agreement is a valid and enforceable contract.

115. CKFI at all times fully performed all of its obligations under the #651 Franchise Agreement.

116. John and Sandra entered into the #651 Agreement and Guaranty of Related Parties, in which they personally promised to perform all of the covenants, representations, warranties, and agreements of Central Valley set forth in the #651 Franchise Agreement.

117. The #651 Agreement and Guaranty are valid and enforceable.

118. CKFI at all times fully performed all of its obligations under the #651 Agreement and Guaranty of Related Parties.

119. Central Valley breached Section 7.9(b) of the #651 Franchise Agreement by using for its own benefit CKFI's Confidential Information, including Client Information, that was communicated to Central Valley.

120. Central Valley breached Section 7.11(c) of the #651 Franchise Agreement by, during the two-year period beginning after the expiration and non-renewal of the agreement, soliciting former Clients or Care Recipients for the purpose of providing or offering to provide any service identical or similar to the Core Services provided by any Franchised Business.

121. Central Valley breached Section 11.3(a) of the #651 Franchise Agreement by failing to work with CKFI to arrange for the orderly transition of Central Valley's Clients, Subscribers, Customers and/or Care recipients to other Comfort Keepers franchisees.

122. Central Valley breached Section 11.3(c) of the #651 Franchise Agreement by (i) not ceasing to use Client Information, (ii) retaining copies of Client Information except as required by law, (iii) not destroying, in accordance with HIPAA regulations, all copies of Client Information not required by law to be retained, (iv) not transmitting to CKFI all historical accounting information as required by the #651 Franchise Agreement, and (v) using and transferring Client Information for purposes not limited to meeting government audit requirements, state licensing, or other state requirements.

123. Central Valley breached Section 11.3(d) of the #651 Franchise Agreement (and the Conditional Assignment) by not assigning to CKFI, at the termination of the #651 franchise, the telephone numbers that have been used in its Franchised Business.

124. Central Valley breached Section 11.3(f) of the #651 Franchise Agreement by not complying with the covenants against solicitation set forth in Section 7.11.

125. John and Sandra breached the #651 Agreement and Guaranty of

Related Parties through the same conduct undertaken by Central Valley alleged above.

126. Unless and until Defendants are ordered to perform their obligations under the #651 Franchise Agreement and Agreement and Guaranty of Related Parties, CKFI is likely to be substantially injured in its business, including its goodwill and reputation, for which CKFI has no adequate remedy at law, as damages alone cannot fully compensate CKFI for Defendants' ongoing breaches.

127. This threat of future irreparable injury to the business identity, goodwill and reputation of CKFI requires that Defendants be ordered to perform their contractual obligations.

128. CKFI is entitled to preliminary and permanent injunction relief against Defendants, enjoining their ongoing breaches of the #651 Franchise Agreement and Agreement and Guaranty of Related Parties.

## SIXTH CLAIM FOR RELIEF
## (Breach of Contract – #651 Confidentiality Agreements and Ancillary Covenants not to Compete)
## (Against Sandra and John)

129. CKFI repeats and re-alleges the preceding factual allegations.

130. CKFI, John, and Sandra entered into identical Confidentiality Agreements and Ancillary Covenants Not to Compete attendant to the #651 Franchise Agreement (the "#651 Confidentiality Agreements").

131. The #651 Confidentiality Agreements are valid and enforceable.

132. CKFI at all times fully performed all of its obligations under the #651 Confidentiality Agreements.

133. John and Sandra breached Section 2 of the Confidentiality Agreement portion of the #651 Confidentiality Agreements by failing to use CKFI's Trade Secrets *only* in the course of their employment by or association with Central Valley as a Comfort Keepers franchisee, and by instead using CKFI's Trade Secrets in their operation of Central Valley Care.

134. John and Sandra breached Section 5 of the Confidentiality Agreement portion of the #651 Confidentiality Agreements by failing to surrender any material containing some or all of CKFI's Trade Secrets to CKFI upon termination of their employment by or association with Central Valley as a Comfort Keepers franchisee.

135. John and Sandra breached Section 2 of the Covenants not to Compete or Solicit provisions of the #651 Confidentiality Agreements by, during the two-year period following the expiration and non-renewal of the #651 Comfort Keepers Franchise, contacting or soliciting (i) any former Client of the Franchised Business to which the #651 Franchise Agreement pertained for the purpose of providing or offering to provide any Authorized Services/Products, or (ii) any referral source with which John or Sandra had contact during the term of the #651 Franchise Agreement for the purpose of obtaining a referral for the provision of Authorized Services/Products.

136. Unless and until Sandra and John are ordered to perform their obligations under the #651 Confidentiality Agreements, CKFI is likely to be substantially injured in its business, including its goodwill and reputation, for which CKFI has no adequate remedy at law, as damages alone cannot fully compensate CKFI for Sandra and John's ongoing breaches.

137. This threat of future irreparable injury to the business identity, goodwill and reputation of CKFI requires that Sandra and John be ordered to perform their contractual obligations.

138. CKFI is entitled to preliminary and permanent injunction relief against Sandra and John, enjoining their ongoing breaches of the Franchise Agreement.

**SEVENTH CLAIM FOR RELIEF**
**(Breach of Contract – #652 Franchise Agreement, Guaranty, and Assignment)**
**(Against All Defendants)**

139. CKFI repeats and re-alleges the preceding factual allegations.

140. CKFI and Central Valley entered into the #652 Franchise Agreement.

141. The #652 Franchise Agreement is a valid and enforceable contract.

142. CKFI at all times fully performed all of its obligations under the #652 Franchise Agreement.

143. John and Sandra entered into the #652 Agreement and Guaranty of Related Parties, in which they personally promised to perform all of the covenants, representations, warranties, and agreements of Central Valley set forth in the #652 Franchise Agreement.

144. The #652 Agreement and Guaranty are valid and enforceable.

145. CKFI at all times fully performed all of its obligations under the #652 Agreement and Guaranty of Related Parties.

146. Central Valley breached Section 7.9(b) of the #652 Franchise Agreement by using for its own benefit CKFI's Confidential Information, including Client Information, that was communicated to Central Valley.

147. Central Valley breached Section 7.11(c) of the #652 Franchise Agreement by, during the two-year period beginning after the expiration and non-renewal of the agreement, soliciting former Clients or Care Recipients for the purpose of providing or offering to provide any service identical or similar to the Core Services provided by any Franchised Business.

148. Central Valley breached Section 11.3(a) of the #652 Franchise Agreement by failing to work with CKFI to arrange for the orderly transition of Central Valley's Clients, Subscribers, Customers and/or Care recipients to other Comfort Keepers franchisees.

149. Central Valley breached Section 11.3(c) of the #652 Franchise Agreement by (i) not ceasing to use Client Information, (ii) retaining copies of Client Information except as required by law, (iii) not destroying, in accordance with HIPAA regulations, all copies of Client Information not required by law to be retained, (iv) not transmitting to CKFI historical accounting information as required by the #652 Franchise Agreement, and (v) using and transferring Client Information for purposes not limited to meeting government audit requirements, state licensing,

or other state requirements.

150. Central Valley breached Section 11.3(d) of the #652 Franchise Agreement (and the Conditional Assignment) by not assigning to CKFI, at the termination of the #652 franchise, the telephone numbers that have been used in its Franchised Business.

151. Central Valley breached Section 11.3(f) of the #651 Franchise Agreement by not complying with the covenants against solicitation set forth in Section 7.11.

152. John and Sandra breached the #652 Agreement and Guaranty of Related Parties through the same conduct undertaken by Central Valley alleged above.

153. Unless and until Defendants are ordered to perform their obligations under the #652 Franchise Agreement and Agreement and Guaranty of Related Parties, CKFI is likely to be substantially injured in its business, including its goodwill and reputation, for which CKFI has no adequate remedy at law as damages alone cannot fully compensate CKFI for Defendants' ongoing breaches.

154. This threat of future irreparable injury to the business identity, goodwill and reputation of CKFI requires that Defendants be ordered to perform their contractual obligations.

155. CKFI is entitled to preliminary and permanent injunction relief against Defendants, enjoining their ongoing breaches of the #652 Franchise Agreement and Agreement and Guaranty of Related Parties.

**EIGHTH CLAIM FOR RELIEF**
**(Breach of Contract – #652 Confidentiality Agreements and Ancillary Covenants not to Compete)**
**(Against Sandra and John)**

156. CKFI repeats and re-alleges the preceding factual allegations.

157. CKFI, John, and Sandra entered into identical Confidentiality Agreements and Ancillary Covenants Not to Compete attendant to the #652

Franchise Agreement (the "#652 Confidentiality Agreements").

158. The #652 Confidentiality Agreements are valid and enforceable.

159. CKFI at all times fully performed all of its obligations under the #652 Confidentiality Agreements.

160. John and Sandra breached Section 2 of the Confidentiality Agreement portion of the #652 Confidentiality Agreements by failing to use CKFI's Trade Secrets *only* in the course of their employment by or association with Central Valley as a Comfort Keepers franchisee, and by instead using CKFI's Trade Secrets in their operation of Central Valley Care.

161. John and Sandra breached Section 5 of the Confidentiality Agreement portion of the #652 Confidentiality Agreements by failing to surrender any material containing some or all of CKFI's Trade Secrets to CKFI upon termination of their employment by or association with Central Valley as a Comfort Keepers franchisee.

162. John and Sandra breached Section 2 of the Covenants not to Compete or Solicit provisions of the #652 Confidentiality Agreements by, during the two-year period following the expiration and non-renewal of the #652 Comfort Keepers Franchise, contacting or soliciting (i) any former Client of the Franchised Business to which the #652 Franchise Agreement pertained for the purpose of providing or offering to provide any Authorized Services/Products, or (ii) any referral source with which John or Sandra had contact during the term of the #652 Franchise Agreement for the purpose of obtaining a referral for the provision of Authorized Services/Products.

163. Unless and until Sandra and John are ordered to perform their obligations under the #652 Confidentiality Agreement, CKFI is likely to be substantially injured in its business, including its goodwill and reputation, for which CKFI has no adequate remedy at law, as damages alone cannot fully compensate CKFI for Sandra and John's ongoing breaches.

164. This threat of future irreparable injury to the business identity, goodwill

and reputation of CKFI requires that Sandra and John be ordered to perform their contractual obligations.

165. CKFI is entitled to preliminary and permanent injunction relief against Sandra and John, enjoining their ongoing breaches of the #652 Confidentiality Agreements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CK Franchising, LLC, respectfully petitions this Court to:

1. Enter a preliminary and permanent injunction prohibiting Defendants from further misappropriating trade secrets and other confidential or proprietary information belonging to CKFI (including Confidential Information or Client Information) and using such information to their advantage and to the detriment of CKFI;

2. Order Defendants to immediately perform their contractual post-termination obligations under the #651 and #652 Franchise Agreements, including their obligations to:

a. work with CKFI to arrange for the orderly transition of Clients, Subscribers, Customers, and Care Recipients to other Comfort Keepers Franchisees in the market areas;

b. immediately and permanently stop using the Client Information, retain no copies of it (except as required by law), and destroy all copies of such information that it is not required by law to retain;

c. immediately assign to CKFI all telephone numbers that have been used in their Franchised Business;

d. immediately and permanently stop, for a continuous uninterrupted period of two years beginning upon compliance, contacting or soliciting (i) any former Client, Care Recipient and/or Subscriber for the purpose of providing or offering to (a) provide general services and care for the elderly and other adults who need assistance in daily living, (b) provide basic personal care

services for the elderly and other adults who need assistance with the basic activities of daily living, or (c) sell or lease any personal care technology equipment; or (ii) any referral source with which Defendants had contact at any point after November 28, 2015, for the purpose of obtaining a referral for the provision of (a) general services and care for the elderly and other adults who need assistance in daily living or (b) basic personal care services for the elderly and other adults who need assistance with the basic activities of daily living; and

e. transmit to CKFI historical accounting information on Client and Customer billing and Client and Customer contact information.

3. Enter a preliminary and permanent injunction enjoining Defendants, individually or through any person or entity, during the term of the #1038 Franchise Agreement (until November 30, 2027), from violating the in-term restrictive covenants in the #1038 Franchise Agreement, Guaranty, and Confidentiality Agreement, by owning, maintaining, operating, engaging in, or having any financial or beneficial interest in any business located in California (including Central Valley Care, Inc.) that derives revenues from providing (a) general services and care for the elderly and other adults who need assistance in daily living or (b) basic personal care services for the elderly and other adults who need assistance with the basic activities of daily living;

4. Order that Defendants be required to file with the Court and to serve upon CKFI's counsel within ten (10) days after entry of any injunction order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

5. Order Defendants to pay CKFI all costs, expenses, and attorney fees incurred in and related to this action and any related action; and,

6. Enter such other and further relief as the Court deems just and proper.

Dated: January 29, 2026

**POLSINELLI LLP**

By: */s/ Wesley D. Hurst*
Wesley D. Hurst

*Attorneys for Plaintiff*
*CK FRANCHISING, INC.*